Our next case for this morning is Hull v. City of Chicago. Mr. Foxx. Good morning, Your Honors. Ed Foxx for the Plaintiff Appellant. This is primarily a false arrest case based upon arresting the wrong person named in a search warrant in which the arrest warrant information did not match the name, date of birth, driver's license, or facial arrest of the plaintiff that was arrested. This case is here from the grant of a summary judgment motion. We are appealing because inconsistencies and demonstrable lies by the defendant police officers demonstrate that it should be up to a jury to examine and determine the credibility of the officers and the reasonableness of the actions that they took in connection with probable cause in arresting the plaintiff. It seems like both of these brothers, though, use the other name. So I'm not sure how you pronounce it, but Tarnche? Tarnche. Tarnche uses the alias LaTuan, and LaTuan has used the alias Tarnche, right? That's correct, but one of the issues of the case in which we're appealing on is what's important is what the officers knew and when they knew it. And what the officers knew at the time that they arrested the plaintiff, they didn't know about the Leeds report, which I believe Your Honor is referring to, and that only came later. And secondly, and which I'll get to in a moment, they had available to them the picture of LaTuan, who was the target of the search warrant, and he looks demonstrably different than Tarnche, who they had the state ID for and who was at the police station. And in fact, we attached their pictures. They should be in color in your... They are. So Exhibit D, who's that? D, I believe, is... D is the thinner guy. Right, and that's LaTuan. That's LaTuan, and so E is Tarnche? Correct. So also important, during the traffic stop, the officers obtained the state IDs of both the brothers in the car, Antoine and Tarnche, at the time. They ran that information, and what came back with the warrant information was a directive that said, quote, and I'm quoting what they had, do not search, detain, or arrest based solely on this record. And that's what the officers had. Also, the officers contended that they didn't arrest either person at the scene of the arrest, but among many facts that are in dispute, the plaintiff disagreed. The testimony was that the defendants did obtain one of the brothers, Antoine, at the scene of the arrest, and they brought him to the police station. Well, to get back to the actual moment of the arrest, the officer orders him out of the car. At that point, the dispatcher says that there's a hit for LaTuan, not for Tarnche, but that LaTuan uses aliases, and then this is the don't search, detain, or arrest on the basis of just this information. The officer doesn't arrest Tarnche at that point. He arrests Antoine, who's not in this case. Correct. Right. Antoine's the twin, right, of LaTuan. Correct. Right. So they release Antoine, and they don't get around to arresting Tarnche until he comes back to get his ID, but by that time, they have learned, haven't they, about all these aliases being used? No, they haven't learned at the time they arrested. They don't learn that until later. Tarnche gets back to the police station a little bit before midnight. They don't, according to the records, they don't learn anything about the Lee's information that I believe you're referring to until well after midnight. So they don't learn that. I thought, well, anyway, we can check the time. Sure. And what's the other factual dispute, which is what is implicit, what you just raised, was that the officers released Tarnche at the scene, implicitly clearing him at the scene at that time. However, the officers testified that, in contradiction to what Tarnche testified, was that Tarnche wasn't even there at the scene of the traffic stop, and, in fact, they got his ID from some supposed mystery man that we never could ascertain, but it was actually Tarnche, and that's another reason why there's credibility issues, which we believe a jury should look into in this case and should be called upon to determine. And the biggest ---- That does seem pretty far-fetched, I have to say. I realize we're not in the credibility business, but, I mean, somebody's sitting there in the car, right? So there are two people. That much we know. There are two people in the car. We know one of them is Antoine. Correct. The other one is somebody who happens to have Tarnche's ID. Correct. And Tarnche says it was him that gave him his ID. The police officer said it wasn't Tarnche. And I think what's important about this credibility issue is you can draw negative inferences from the implicit lies in the police testimony that they had at the time, and that's why they released him, but that's why they didn't want to say Tarnche was in the car at the time of the traffic stop. And that's why we contend that a jury should be deciding this case. And I think the more important and more significant material lie in this case, and it gets to the fundamental notion of why they ---- and how they made the summary judgment motion, was that the police officer, Brown, testified in deposition, clearly testified that he ran the name of Latoine, the target, at the police station. And then we asked him at deposition about running Latoine and why did you do that and what was the impact that it had on you in doing that. And at page 80 of his deposition he said, based on running Latoine's name, actually, I'm quoting, actually it made me determine that Latoine Hull and Tarnche Hull were the same person. But he never ran Latoine's name at the police station. We know this via the paperwork we received that his name wasn't run. So what they did to file a summary judgment motion was get an affidavit from Officer Brown. And we took his deposition two times, and he never said anything contrary to what I've just read. They got an affidavit from Officer Brown and contradicted that testimony. So he said he based his arrest not on running Latoine, but he based it on running Tarnche. And they put that in an affidavit, which contradicted the testimony of the officer. And this is abundantly clear from all the case law. When you have an affidavit that contradicts the substance of a deposition in a material way, as it does here, at the very least, there's a jury issue that they need to determine the credibility of. And oftentimes these courts will strike the affidavit when it is in contradiction, and that's what happened here. And not only does that affect the credibility of the officers, but it also goes to the facts and circumstances under which they did and the reasonableness of their actions and beliefs, and it's all put into question by the officers. Now, the target of the warrant was Latoine Hall. Nobody can reasonably dispute that if the target of the warrant is Latoine and there's some confusion, maybe, about that, a police officer goes back to the police station and runs his name in the computer and sees what he gets. He never does what's most obvious. He doesn't run his name. Had he done that, among other things, he would have gotten his photograph and, as we've shown, seen that his photograph was different than Tarnge Hall, but he doesn't run it. Even though he lies about it, he doesn't run his name. Also, if he would have run the target's name at the police station, he would have seen that the target was arrested on July 9th. That's the date for which the offense for which the warrant was issued. And Tarnge Hall, whose name he ran at the police station, was not arrested on July 9th, and that was the basis upon which the prosecutor determined, after six days in jail, that Tarnge Hall wasn't the person named in the arrest warrant, so she agreed to dismiss the charges against him. The defendant's argument to all of this is basically that, and they say this multiple times, is that probable cause was established when the defendants accessed the criminal history report of LeTuan at the police station and they discovered an eight-year-old alias. It uses the name Tarnge. Correct. And Tarnge used the eight-year-old alias of LeTuan, and that was the reference they made several times in there. But the problem with that is if the officer had run LeTuan's name as he claimed he did, he would have seen that they're different people and he would have seen they weren't arrested on the same day, and that should have been the end of the story. Other inconsistencies which we feel a jury should be called upon to decide, and we've already brought them up, are that Antoine was indeed taken to the police station from the scene of the traffic stop, and he's the twin brother of LeTuan, yet he was released. They say they never took Antoine to the police station, yet the evidence shows they ran Antoine's name at the police station. So significant negative inferences can be taken from that. And also, as we also mentioned, the defendants claim that Tarnge wasn't in the vehicle, but yet Tarnge was in the vehicle and that's how they got his ID. That's another negative inference which we can take from that. Okay, you're just about to run out of your rebuttal if you want to save a bit. Mr. Collins. May it please the court. So, Mr. Collins, can you straighten out this timeline once they're back at the station? Brown and Garza go back to the station, and then at some point Tarnge comes to the station to get his ID, but when do they run the computer searches? The key search in question is accessing Tarnge's, Mr. Hull's, rap sheet, and that's what reflects that he had previously missed. When does that happen, before or after he's there? It was before he was there, around 7, 7.30. Because Mr. Fox was under the impression that it was after he had come back to get his ID. No, that is incorrect. Mr. Hull's rap sheet was accessed before he showed up at the police station. And we have the records that say the computer records, how do we know that? That's correct. It's in our Statement of Undisputed Facts, Paragraph 17. We state that Officer Brown, when he returned to the police station, accessed Mr. Hull's rap sheet and saw that he had previously used the name LaTuan. And that paragraph cites the supporting records, the computer records that show that Officer Brown did in fact access that rap sheet. And it's your theory that that's what motivated them, when Tarnge comes back to get the ID, to arrest him? Yes, Your Honor. Seeing that alias on that. And there's no probable cause to arrest him before that? We agree. Correct. But when Officer Brown saw that Mr. Hull had used the name LaTuan Hull, which is the name on the warrant. But he never looks up to see if anyone in the record is named LaTuan Hull, and he never, therefore, sees that the man by the name of LaTuan Hull, or there's another LaTuan Hull who looks different, who was actually arrested on the day in question, that probably is the person for whom the arrest warrant was issued. And they don't really look the same. The pictures are there. That's correct. But the record doesn't establish that the warrant information for LaTuan's warrant actually included a photograph that the officers had access to. But it would include the arrest on the 9th of July. The arrest that gave rise to the warrant? Yeah, the warrant. That's correct. And they never bothered to look at it. But that shouldn't defeat probable cause, where the record shows that the officers knew that Mr. Hull had previously used the name that's on the warrant. So they know one scrap of information. They don't know that he's the person, though, for the arrest warrant. They know there are all these people floating around. There's Antoine, there's LaTuan, there's Tarnge. That's correct. So probable cause by that definition means some remote chance that it's correct? No, it's more than that, especially in light of the fact that LaTuan Hull is an unusual name. Our research uncovered only one person in the entire city with that name. So when Officer Brown saw that Mr. Hull had gone by the alias of LaTuan Hull, that led him reasonably to conclude that the warrant was for the plaintiff. And moreover, the records in this case comparing the warrant information to the information on Mr. Hull's rap sheet show that there are many commonalities between Mr. Hull's information and the information on the warrant, most notably the FBI and SID numbers, which are both fingerprint-based, one of a kind. Those numbers that were listed on the warrant, which was for LaTuan, were Mr. Hull's actual numbers. Do we know how that came about? I did think that was interesting information. We don't know specifically. I believe, Your Honor, that the issuing jurisdiction is responsible for entering in the information into the LEADS database. And so perhaps it was an error on their end that explains it. So they just blow up all these people with the name of Hull and they copy down the wrong number? Does LaTuan have a number? And is it the same as his brother's? I don't know. It shouldn't be the same. I recognize it shouldn't be the same. I'm asking, is it the same? I don't know LaTuan's number. Wasn't that one of the things that they found out, that it was the same? It was the same. I think that somehow or other they tarnished the wrong number. The FBI number or whatever it is. I don't know if the number that's listed on Mr. Hull's rap sheet is incorrect. I understand it, that it is his actual number. However, that number, both the FBI number and SID numbers, were listed on the arrest warrant for LaTuan. Well, who had the suit? Which two had the same number? The actual number for Mr. Hull. Whatever the FBI thing is, I don't know what that is. I'm sorry, Your Honor? The other number, not the one on the rap sheet, but there's a separate identification number. Are you referring to the FBI and SID number? Yes. Both of those, which were listed on Mr. Hull's rap sheet, matched the two numbers, both of them. They were on the arrest warrant for LaTuan. And so the question I'm trying to get at is, did anybody ever look to see if those same numbers were there on LaTuan's rap sheet? Not to my knowledge. Or did they check the fingerprints to see, yes, these really are your fingerprints? I believe Mr. Hull was fingerprinted as he was processed after his arrest. Right. I mean, you can fingerprint somebody, though, and stick it in the drawer. I mean, look, there's a lot of mix-up between these two people in this record, so that's why we can't rule out the fact that there's even more of it. And the case law is clear, however, that when an officer is looking at a warrant and is in front of a person whose information doesn't perfectly correspond with the information on the warrant, some differences don't defeat probable cause. And to be sure, there were some differences here between the warrant and Mr. Hull's information. But those differences don't defeat probable cause in light of the commonalities that were there. Why did they transfer Tarsh over to the sheriff? It was later in the evening of his arrest. Pardon me? It was later in the evening of his arrest. I believe he was arrested around midnight and transferred. It was longer than that, wasn't it? I'm talking when he changed his location. It was over at the sheriff's where they decided that Tarsh was the wrong guy, right? It was at his hearing before judge that he insisted. Okay, well, I'm confused. I thought there was some transfer, and then some prosecutor at the sheriff discovered that Tarsh was the wrong guy. Your Honor, my understanding is that Mr. Hull was transferred from police custody to the county facility. Okay, I said sheriff. That's county then. Yeah. Right. I'm sorry. I thought the sheriff was the county. Same thing. Yes. And then after that transfer to the sheriff, he had a hearing before a judge, and the prosecutor basically admitted that Mr. Hull was the wrong person. In all this time, maybe LaTuan didn't realize his brother was in jail. Perhaps. Didn't come forward and say, no, it's me, not him. That did not happen. No, Your Honor. It's brotherly love, I guess. With respect to the false imprisonment claim, unless the court has any questions on that issue, we rest on our brief. And if the court has no further questions, for these reasons, the judgment of the district court should be affirmed. Thank you. Thank you. Anything further? Just one thing I'd like to clear up, Judge, and maybe I misspoke, but the rap sheet of Tarnt was run before he was arrested. It was the lead sheet that was run after he was arrested, and that supposedly had the commonalities of the numbers, so that information shouldn't even be relevant because the police weren't aware of that at the time of the arrest. They were aware of the rap sheet, and all it said was Tarnt used this alias of LaTuan eight years period. It doesn't mean they're the same person, and they didn't do anything to check to see who LaTuan was, including run his name in any database or check his fingerprints or do anything. And I'll leave it at that. All right. Well, thank you very much. Thanks to both counsel. We'll take the case under advisement.